UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
          :
NOVARTIS ANIMAL HEALTH US, INC.,    :
          :
         Plaintiff,   :
          :    05 Civ. 4688 (GEL)
    -v-       :
          :    **OPINION AND ORDER**
ABBEYVET EXPORT LTD.,      :
 d/b/a Flea Control Online,    :
          :
         Defendant.   :
          :
------------------------------------------------------------x

David Bernstein, Christopher J. Robinson,
Debevoise & Plimpton LLP, New York,
New York, for plaintiff.

Andrew S. Langsam, Marilyn Neiman,
Levisohn, Berger & Langsam, LLP, New York,
New York, for defendant.

GERARD E. LYNCH, District Judge:

      In this Lanham Act action for trademark infringement, Novartis Animal Health US, Inc.

("Novartis-USA"), the American affiliate of Novartis A.G., a manufacturer of veterinary

pharmaceuticals, moves for a preliminary injunction against defendant Abbeyvet Export Ltd.

("Abbeyvet"), d/b/a/ Flea Control Online, a British firm that markets similar products via the

Internet.[1] There is no genuine dispute about the essential fact that Abbeyvet sells "gray market"

---

[1] Flea Control Online is a trade name of Abbeyvet Export Limited, a British corporation. Plaintiff originally filed a complaint against Flea Control Online, doing business as fleas-go.com, fleasgo.com, advantageflea.com, flea-controlproducts.com, and 1fleacontrol.com. Upon learning of the error in misstating defendant's name, plaintiff promptly moved for amendment of the caption, pursuant to Rule 15(c)(3) of the Federal Rules of Civil Procedure. The parties have represented to the Court that they have stipulated to an amendment of the caption to include the true corporate name of the defendant, and plaintiff's motion to amend the caption is therefore granted on consent.

products – genuine Novartis drugs, sold in their authentic, original packaging, but designed for the British market – to United States consumers.[2] Novartis-USA argues that the likelihood of consumer confusion resulting from certain variations between the U.S. and U.K. products warrants an injunction. Its motion will be granted.

A plaintiff is entitled to a preliminary injunction upon a showing of irreparable harm and a likelihood of success on the merits. Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 145 (2d Cir. 2003). Irreparable harm and the likelihood of success are presumed in trademark infringement cases once the plaintiff has shown a likelihood of confusion. New Kayak Pool Corp. v. R & P Pools, Inc., 246 F.3d 183, 185 (2d Cir. 2001). Thus, Novartis-USA will be entitled to an injunction if it can establish a likelihood of confusion.

Novartis-USA has met its burden. There is no dispute that as the U.S. licensee of Novartis A.G., the owner of the marks, Novartis-USA holds valid trademarks for the terms "Novartis" and "Program" in connection with pet medicines. The only issue in the case is whether defendant's sale of British versions of the same medicines, using the same marks, will likely confuse U.S. consumers.

Ordinarily, trademark infringement and the likelihood of confusion is determined by application of the nine "Polaroid factors." See Polaroid Corp. v. Polarad Elec. Corp., 287 F.2d 492 (2d Cir. 1961). This complex assessment, though, is not useful in the context of gray market

---

[2] It is undisputed that Abbeyvet does not sell to U.S. consumers in a merely incidental way. Rather, its websites are specifically directed toward United States consumers, denominating prices in dollars and providing U.S. toll-free telephone numbers for consumer inquiries. Indeed, the websites *cannot* legally be used to sell to British consumers, because in the U.K. (unlike the U.S.) the products in question cannot be sold over the counter without a prescription, and Abbeyvet is not licensed to sell prescription medicines in the U.K.

goods, since such goods typically utilize the exact same marks, sold in the original packaging legitimately obtained from the manufacturer. See Original Appalachian Artworks, Inc. v. Granada Electronics, Inc., 816 F.2d 68, 74 (2d Cir. 1987) (Cardamone, J., concurring) (stating that the traditional consumer confusion test is difficult to apply for "gray goods"). In this case, for example, Abbeyvet's Internet sales involve genuine Novartis pharmaceuticals, obtained from the British affiliate of Novartis A.G. They are neither counterfeit goods nor goods masquerading as genuine by adopting confusingly similar marks; they use the actual marks and the marks are lawfully affixed to them. Under these circumstances, courts have adopted a simpler test, finding a likelihood of confusion if: (1) the goods were not intended to be sold in the United States, and (2) they are materially different from the goods typically sold in the United States. Id. at 73; Curtis v. Nat'l Wholesale Liquidators, Inc., 890 F. Supp. 152, 158 (E.D.N.Y. 1995). "[A] material difference between goods simultaneously sold in the same market under the same name creates a presumption of consumer confusion as a matter of law." Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992).

Plaintiff indisputably meets the first part of this standard. Abbeyvet acknowledges that the products it sells over the Internet are intended for the British market. It also acknowledges that the product inserts and packaging design are specifically tailored for use in the U.K. and designed to meet U.K. regulatory requirements. The only meaningful question in the case, therefore, is whether Novartis-USA is likely to prevail on the question of material difference.

Abbeyvet points out that the differences in the products are slight. Both the U.S. and U.K. formulations of the product contain the same active ingredient in identical or nearly identical form. They operate in the same way, based on the same underlying chemical and

3

biological principles; they emanate from the same manufacturer; and there appears to be no dispute that they are equally effective, when properly used, for their intended purpose. Some of the minor but arguably material factors to which Novartis-USA points, moreover, have been modified by Abbeyvet in response to this action in ways that most likely render them moot. For example, in order to remedy the concern that the U.K. product inserts unhelpfully direct consumers to British public health authorities in cases of accidental human ingestion of the drugs, Abbeyvet has included special information for U.S. consumers on its website and in informational materials in its shipments. As Abbeyvet correctly points out, U.S. consumers shopping through its website should have no doubt that they are purchasing British formulations, and will not be confused on that point.

Nevertheless, Abbeyvet's arguments are ultimately unpersuasive. The essential fact is that the British product, though marketed under the very same trademarks (which have been exclusively licensed in the U.S. to Novartis-USA), differ in ways that a factfinder at trial would likely find would be material to the average consumer. The British pills, for example, are not flavored, as the U.S. product is, and are sold in different dosages. Indeed, the British version has not been approved for sale or use in the United States by the Food and Drug Administration ("FDA"), and does not provide in or on its packaging certain information and labeling (regarding such matters as proper storage and safety precautions and potential adverse effects) required by FDA regulations.[3]

---

[3] Abbeyvet argues that Novartis-USA may not attempt to enforce these FDA regulations against it, as there is no private right of action under the Food, Drug and Cosmetics Act. See Ellis v. C.R. Bard, Inc., 311 F.3d 1272, 1285 (11th Cir. 2002). Defedant's argument misses the point. Plaintiff is not attempting to enforce FDA regulations. It is merely referring to the content of those regulations in noting that there are differences between the British and U.S. products that

These are not trivial differences. Abbeyvet is perhaps correct that many consumers will understand that the British product is different from the U.S. version, and comes from a different source, and that such consumers will have no difficulty in converting their pets' weights from kilograms to pounds and calculating the correct dosage to properly use the product. However, not all pet owners are equally sophisticated, and differences between what consumers expect when they buy a product under a particular brand name and what they actually get can harm the reputation of the trademark holder. Even small differences matter. "When dealing with the importation of gray goods, a reviewing court must necessarily be concerned with subtle differences, for it is by subtle differences that consumers are most easily confused." Nestle, 982 F.2d at 641. A dog owner whose dog readily ingested the flavored U.S. product but refuses the plain U.K. medicine marketed under the same name may as a result choose to avoid all flea medication under the Novartis Program brand, not simply the version obtained from the website. A similar negative reaction to Novartis products may occur when a consumer finds it difficult to calculate the right dosage in metric units, or finds that the British tablets are provided in unfamiliar or inconvenient doses. In gray market cases, "the threshold of materiality is always quite low." Id.

As a consequence of just such an analysis, numerous courts have enjoined the sale of gray market pet medications into the United States. See, e.g., Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd., 04 Civ. 10213 (BSJ) (S.D.N.Y. June 14, 2005); Novartis Animal Health US, Inc. v. Bianjade Enterprises Pty Ltd., 04 Civ. 533 (MBM) (S.D.N.Y. July 30, 2004); Novartis Animal Health US, Inc. v. Shop4Pets, 04 Civ. 2410 (LLS) (S.D.N.Y. July 9, 2004);

---

would likely be found to be material to consumers.

Bayer Corp. v. Custom School Frames, LLC, 259 F. Supp. 2d 503, 504 (E.D. La. 2003).

Defendant makes little effort to contest this analysis, and cites no contrary authority. Its principal argument, rather, is that the injunction should be denied on the basis of laches, in that plaintiff failed to seek an injunction immediately upon learning of defendant's websites. This argument is unavailing. It is true that Novartis-USA has not acted in a way that bespeaks the urgency usually connoted by "irreparable harm." However, the presumption of irreparable harm in trademark cases makes it unnecessary to calculate the degree of urgency with such precision. Plaintiff acted promptly to attempt to resolve the dispute informally, and its efforts at settlement should not be held against it. Nor can Abbeyvet prevail by pointing out that Novartis A.G.'s United Kingdom licensee was perfectly happy to sell Novartis products in bulk to Abbeyvet. Novartis UK is a corporate entity separate and distinct from Novartis-USA, and its actions and knowledge are not attributable to plaintiff.

In the end, Abbeyvet's position boils down to an economic policy argument that American consumers would be better off if they were permitted to purchase via the Internet cheaper British Novartis pet medicines, which apparently work perfectly well on the British cousins of American pets. It is not for the courts, however, to assess the merits of that argument. Congress has determined that the interests of the American public are ultimately best served by according protection to trademarks. Under that regime, trademark protection is territorial. Novartis AG is entitled to license its trademarks to different exclusive users in the U.S. and the U.K., and its local licensees are permitted to use those marks, within their territory, on materially variant products designed for their local markets. Under well-established law, selling the British variant into the United States under marks that are reserved here for the use of the U.S. licensee

inevitably creates consumer confusion about the source of the product, and is therefore prohibited.

Since Novartis-USA has established a likelihood of success on the merits of its claim for trademark confusion, and since irreparable injury is presumed in such cases, its motion for a preliminary injunction is granted.

SO ORDERED.

Dated:    New York, New York
July 8, 2005

GERARD E. LYNCH
United States District Judge